PEOPLE *v.* STRICK.

CRIMINAL LAW—MURDER—INSANITY—ACCEPTANCE OF PLEA OF GUILTY.
   In prosecution for uxoricide, where record shows that defendant had been examined in probate proceedings to have him declared insane on day before the killing and had been found to be suffering from manic depressive psychosis, a violent form of insanity; that he was held by the police four days before being arraigned; and that upon arraignment, he told the court he could not remember what had happened, that he had been declared insane, that what happened was like a trance to him, that his ears were blacked out, and that he must have lost

his mind; defendant's plea of guilty to charge of murder was so qualified by his condition as to require court to refuse it without having made further investigation to ascertain if made with full knowledge of nature of accusation (3 Comp. Laws 1929, § 17328).

NORTH and WIEST, JJ., dissenting.

Appeal from Jackson; Williams (Benjamin), J. Submitted October 12, 1939. (Docket No. 140, Calendar No. 40,553.) Decided February 14, 1940.

John Strick was convicted of murder. On motion for leave to move for a new trial and for new trial in case leave be granted. Leave to move for a new trial granted. New trial denied. Defendant appeals. Reversed and new trial granted.

*L. A. Vincent* and *John A. Dahlem,* for appellant.

*Thomas Read,* Attorney General, and *Owen Dudley,* Prosecuting Attorney, for the people.

SHARPE, J. I am not in accord with the opinion of Mr. Justice WIEST. The testimony stands undisputed that on the 7th day of August, 1936, Dr. Meads, under authority of the probate court of Jackson county, examined respondent and found him suffering from manic depressive psychosis, which is a violent form of insanity; that respondent was held four days by the police before he was arraigned; and that upon arraignment, he told the court he couldn't remember what happened, that he had been declared insane, that what happened was like a trance to him, that his ears were blacked out, and that he must have lost his mind. It is also a fact that when admitted to prison the respondent was examined by Dr. Phillips and found to be suffering from manic depressive psychosis, confused, dazed and entirely disoriented.

The question for consideration is: Was respondent making an unqualified plea of guilty when arraigned under 3 Comp. Laws 1929, § 17328 (Stat. Ann. § 28.1058), which provides:

"Whenever any person shall plead guilty to an information filed against him in any court, it shall be the duty of the judge of such court, before pronouncing judgment or sentence upon such plea, to become satisfied after such investigation as he may deem necessary for that purpose respecting the nature of the case, and the circumstances of such plea, that said plea was made freely, with full knowledge of the nature of the accusation, and without undue influence. And whenever said judge shall have reason to doubt the truth of such plea of guilty, it shall be his duty to vacate the same, direct a plea of not guilty to be entered and order a trial of the issue thus formed."

In my opinion, respondent's plea of guilty was so qualified that the court should have refused to accept such plea as it was not made with full knowledge of the nature of the accusation. The nature of the crime committed and the statements made by respondent in open court should have apprised the court that further investigation should be made before the plea of guilty was accepted.

In *People* v. *Goldman,* 245 Mich. 578, 584, the following language was used:

" 'The law seeks no unfair advantage over a defendant, but is watchful to see that the proceedings under which his life or liberty is at stake shall be fairly and impartially conducted. It holds in contemplation his natural distress, and is considerate in viewing the motives which may influence him to take one or another course. Therefore, it will permit a plea of guilty to be withdrawn if it fairly appears that defendant was in ignorance of his rights

and of the consequences of his act, or was unduly and improperly influenced either by hope or fear in the making of it.' "

I am of the opinion that what occurred in open court on August 12 and 13, 1936, constituted reversible error. The judgment is reversed and a new trial ordered.

BUSHNELL, C. J., and POTTER, CHANDLER, McALLISTER, and BUTZEL, JJ., concurred with SHARPE, J.

WIEST, J. (*dissenting*). This is an appeal from denial of a new trial.

The morning of August 8, 1936, at his home in the city of Jackson, defendant killed his wife by striking her on the head with a ball bat as she was coming up the cellar steps.

Screams caused neighbors to call the police, to whom defendant stated that his wife had gone to the grocery but, upon search, found her dead body at the foot of the cellar stairs. Defendant was arrested and pleaded guilty in the circuit court to a charge of murder. The circuit judge questioned defendant, examined into the circumstances, accepted the plea, found defendant guilty of murder in the first degree and, August 13, 1936, imposed sentence of imprisonment for life.

In November, 1938, defendant petitioned the circuit court for leave to file a motion to vacate the conviction and sentence and grant a new trial. Under leave granted, defendant moved for a new trial on the ground that he was insane at the time of the offense, conviction and sentence and by reason thereof there was no valid plea and judgment. The court denied the motion, and upon appeal the question is whether, under the record of the arraignment, statements of defendant, and examination into the

circumstances, enough appeared to have required the circuit judge to sense the now claimed insanity on the part of defendant and to command an inquiry.

Defendant invokes 3 Comp. Laws 1929, § 17241, as amended by Act No. 317, Pub. Acts 1931 (Stat. Ann. § 28.967), in force in 1936, and which provided:

"When a person accused of any felony shall appear to be insane or shall have been acquitted upon trial upon the ground of insanity, the court, being certified by the jury or otherwise of the fact, shall carefully inquire and ascertain the issue of insanity."

Procedure for hospitalization is provided, with resumption of the criminal proceedings in certain cases when such person is restored to his right mind.

We quote from the questions by the court and answers made by defendant at the arraignment:

"*The Court:* You understand this charge, that you murdered your wife?

"*A.* Yes.

"*Q.* That is true, you killed her?

"*A.* I must have. * * *

"*Q.* Tell me what you did at the time of this crime?

"*A.* All I can remember, I took a ball bat in my hand. * * *

"*Q.* What did you do with the bat?

"*A.* When I had it in my hand, afterwards it is just like a trance to me. I can't remember what I did.

"*Q.* Had you been drinking?

"*A.* No. I am not a drinking man.

"*Q.* Do you know what you did with the ball bat?

"*A.* I can't remember. I am trying to, hard, but I don't know. The doctor was over and examined me, which they declared me insane. He talked with me for four hours and worried me.

"*Q.* What doctor was this?

"*A.* Dr. Meads. And somehow I committed the crime. I admit I done it. But he knew he should have took me along with him. I would escape all the trouble. Now it is too late. * * *

"*Q.* Don't you remember anything that happened?

"*A.* I just remember my wife just said once, John—— and then my ears was blacked out and I practically must have lost my mind.

"*Q.* Do you remember striking her with the ball bat?

"*A.* Yes.

The next day the defendant was questioned again by the court:

"*Q.* You are not without funds or money are you?

"*A.* No.

"*Q.* You have money in the bank or somewhere that you could hire a lawyer if you wanted to?

"*A.* Well Judge, I know I am guilty, and it is not necessary. What I have got I would like to leave for the boy.

"*Q.* You don't want any lawyer?

"*A.* No.

"*Q.* You still feel as you did yesterday when you were in here? You understand you are charged with murder?

"*A.* Yes.

"*Q.* And that you want to plead guilty to it?

"*A.* Yes.

When brought to the bar for sentence defendant, in reply to the usual question, said:

"The only thing, I would like to be sentenced first to the hospital."

The court thereupon imposed imprisonment for life and stated:

"With respect to your request to me for an examination, I will say to you that the prison here at Jackson has recently had appointed an expert alienist whose duty it will be to examine all men in the prison here. He will undoubtedly take up your case and give you an examination and if you need hospital treatment he will see that you get it."

We find nothing in this from which the court should have sensed insanity on the part of defendant.

The court, in denying the motion for a new trial, stated that nothing was brought to his attention leading him to suspect that defendant was insane.

Defendant, in his motion for a new trial, sets up matters not called to the attention of the circuit judge, and insists that, had the circuit judge made inquiry, he would have ascertained reasons for refusing the plea.

It is claimed, in behalf of defendant, that, two days before he killed his wife, a petition was filed in the probate court for the county of Jackson by the superintendent of the poor to have him adjudged insane and committed to a State institution for treatment and, upon the filing of the petition, the probate court appointed Dr. Meads to interview and examine defendant and that Dr. Meads visited the home of defendant the night before he killed his wife and spent some time in making the examination.

Dr. Meads, in support of the motion for a new trial, made an affidavit that, in his opinion, defendant was violently insane when he visited him the night before the wife was killed.

Defendant also urged, upon the motion for a new trial, that in the probate court in October, 1938, upon defendant's petition to be relieved from guardianship, David P. Phillips, psychiatrist at the prison, testified that at the time defendant was admitted to

the prison he was regarded as a mental case, suffering from manic depressive psychosis, and was confined for four months in an isolated ward for psychopathic cases, and in his opinion defendant was insane at the time he entered the prison.

In considering the testimony of the prison psychiatrist that defendant was insane when he entered the prison, and is still there, we have in mind the provisions of 2 Comp. Laws 1929, § 6932 (Stat. Ann. § 14.854) and which we now quote:

"Whenever the physician at the State prison at Jackson * * * shall certify to any warden, or other officer in charge of such penal institution that any inmate therein is insane, it shall be the duty of such officer in charge to make immediately a full examination into the condition of such inmate, and if fully satisfied that he is insane, such officer in charge, where said inmate is confined, shall forthwith cause such inmate to be transferred to the Ionia State hospital."

Of course, all this having occurred subsequent to defendant's conviction was not before the court at the time of the acceptance of the plea of guilty.

At the time the officers went to the home of defendant they saw a letter lying upon a table which defendant picked up and placed in his pocket when the officers announced the finding of the body in the cellar. That letter was written by defendant to his sister and stated:

"Jenny come quick, Minnie is dead.

John."

Defendant told a witness that he wrote the letter before killing his wife, but in court defendant said:

"Judge, may I correct that mistake. I must have wrote that when I started to come to my senses."

Defendant now claims to be sane.

Under the record the circuit judge was not in error in accepting defendant's plea and, upon disclosure of the circumstances surrounding the commission of the offense and defendant's statements relative thereto, in adjudging defendant guilty of murder in the first degree and imposing sentence.

In behalf of defendant it is also claimed that under the showing for a new trial he was in fact insane at the time he killed his wife, and at the time of his conviction and sentence and as an insane person he was incapable of committing murder and pleading to the charge and, therefore, the court was in error in not granting a new trial.

This claim of review is in the nature of the common law writ of error, *coram vobis,* to review matters not of record in the proceeding but made of record subsequently. Such review in this jurisdiction is made obsolete by statutory provisions relative to review procedure. *Dewey* v. *Otsego Circuit Judge,* 250 Mich. 377. The showing relative to defendant's insanity at the time he killed his wife was not in the nature of newly discovered evidence calling for a new trial.

The denial of a new trial should be affirmed.

NORTH, J., concurred with WIEST, J.